RUTH HEATER, Appellant, v. PATRICK J. BAGAN et al., Appellees.

1302

NOVEMBER 20, 1928.

*John A. Hull* and *Howard & Sayers*, for appellant.

*F. J. Kennedy* and *T. J. Mahoney*, for appellees.

FAVILLE, J.—I. One John T. Mitchell died June 4, 1920. At the time of his death, he was the owner of 120 acres of land situated in Boone County. He left a will, which was duly admitted to probate in said county on September 13, 1920. His wife had predeceased him, and he was survived by three daughters, who are beneficiaries under his will. One of said daughters was Gertrude May Bagan. Gertrude had been twice married. By her first husband she had one daughter, who, at the time of the bringing of this action, was married, and who is the plaintiff and appellant herein. Gertrude's second husband was the appellee Patrick Bagan, and by him she had one daughter, Beulah Josephine Bagan. Gertrude survived her father, Mr.

Mitchell, about a year, and died intestate. . The daughter, Beulah Josephine, died the following day. The appellee D. A. Bagan is the brother of Patrick, and was appointed administrator of the estate of Gertrude. One Rinker was appointed administrator with the will annexed of the estate of said Mitchell. Patrick Bagan resided at Waterloo, and D. A. Bagan resided at Estherville.

On or about December 14, 1925, two actions were commenced in Boone County. In one of these actions,—the instant case,—the appellant was the plaintiff, and in the other, Rinker, as said administrator, was the plaintiff. The original notice in the instant case was directed to Patrick Bagan and to D. A. Bagan, as administrator of the estate of Gertrude. The original notice in the other case described Rinker as administrator with the will annexed of Mitchell's estate, as plaintiff, and was addressed to Mabel Maud Becker, and other parties, including Patrick Bagan and D. A. Bagan, as administrator of the estate of Gertrude. In the instant case, the notice stated that the petition would allege that the plaintiff claimed that, under the will of said Mitchell, she was entitled to receive one third of the net proceeds of the sale of the real estate, and that the defendants Patrick and D. A. Bagan, as administrator, had no interest of any kind whatsoever in said real estate or proceeds thereof. In the action brought by Rinker as administrator, the original notice recited that the petition in said action would pray for an order by the court authorizing the administrator to sell the real estate of said decedent and fix the terms, conditions, and manner in which he should make the sale. The same attorney appeared for the plaintiff in each of said actions. It appears without dispute that the original and a copy of each of said original notices were sent to the sheriff of Black Hawk County for service on Patrick, and to the sheriff of Emmet County for service on D. A. Bagan. Each of said parties was served on the 14th day of December, 1925, with the original notice in the suit brought by Rinker as administrator. No question is raised as to the sufficiency of the service of the notice in both cases upon Patrick, or of the service of the notice in the Rinker case upon D. A. Bagan, but a question is raised as to whether or not the notice in the instant case was served upon D. A. Bagan. As before stated, default was entered in the instant case against Patrick

Bagan, and decree rendered on said default, by which the will
of the testator Mitchell was construed, and Patrick was deprived
of any interest in said estate by the terms of said decree. Pat-
rick's petition to vacate and set aside said decree and to grant
him a new trial in said cause is predicated solely on the ground
of unavoidable casualty or misfortune in failing to make de-
fense. The materiality of the service of the original notice in the
instant case upon D. A. Bagan grows out of the claim of Patrick
with regard to the alleged unavoidable casualty or misfortune.
It is the contention of Patrick that, after the original notices in
the two cases had been served upon him at Waterloo, he called
his brother D. A. at Estherville, and informed him that he had
been served with "some notices," and was told by his brother,
in effect, that he (D. A.) had also been served with "a paper"
or "papers" on the same day. Patrick instructed D. A. to see
his attorney, Mr. Kennedy, in regard to the matter, and have
him attend to it, and D. A. promised Patrick that he would do so.
Patrick did not forward the copies of the notices that had been
served upon him to his brother D. A. or to Kennedy, and had no
correspondence or communication with either of said parties
until some time after the term of court described in said original
notices, and after default and decree had been duly entered
against him. It is the contention of Patrick that he believed,
by reason of the conversation with his brother over the tele-
phone, that the latter had been served with the same notices
that he had been served with, and that he relied upon the prom-
ises of his brother to employ Kennedy and to give the matter
attention, and believed that this would be done. At this point,
it is the contention of D. A. that no notice was served upon him
in the instant case, and that the only notice he received was the
one in the case in which Rinker, as administrator with the will
annexed, sought an order for the sale of the real estate in the
Mitchell estate. He contends that he knew nothing about the
instant case, and supposed that Patrick referred only to the
Rinker case, in which he did employ Kennedy. It is Patrick's
contention that he assumed that D. A. would employ Kennedy to
look after both cases.

It becomes important to determine whether there was a mis-
understanding at this point that was an unavoidable casualty or
misfortune, preventing Patrick from defending in said action.

The return of the sheriff upon the original notice in the instant case recites that it was served personally upon D. A. at Estherville, and a copy delivered to him. The testimony of D. A. is to the effect that the deputy sheriff, at the time of the service, produced a paper, and notified D. A. that he had a paper or papers to serve upon him; that he waived the reading of the same, and requested the officer to deliver the copy to his attorney, Kennedy; and that he himself did not receive any copies. The deputy sheriff testified that he had no particular recollection of how many copies he handed to D. A., but that he would say that he gave him two copies; that he reported his service to the sheriff correctly, and the latter made out the return in the name of the sheriff, by the deputy; that the return was made in accordance with the usual custom; and that he did not serve the papers and make a different return. He testified that, within five or ten minutes after having served the papers on D. A., he took them to Kennedy's office, and handed them to Kennedy, who looked at them and laid them down. A bill for the service of the notices in both cases upon D. A. was submitted by the sheriff to the attorney for the plaintiff, and the fees were paid. It is the contention of D. A. that he never saw the copy of the notice in the instant case; that the only one he ever saw was the notice in the Rinker case, and that was in Kennedy's office, sometime after the service. Kennedy testified that he did not receive any copy of the notice in the instant case from the deputy sheriff, but only the one in the Rinker case, and did not know that such a case was pending until in September, 1926. Kennedy entered his appearance for the defendants in the Rinker case, and on December 31, 1925, wrote the attorney for the plaintiff in said case, stating that he had received a copy of the petition in said case, and had entered his appearance for the defendant, and stated in the letter:

"As I understand your petition, you do not dispute that the property could not be distributed in accordance with the list of heirs filed in the Gertrude May Bagan estate."

He also said:

"If you are simply asking for authority to sell, that we will not care to resist, and not care to file anything. If you

expect other relief, please advise me so that I may file something.''

Kennedy received a reply to this letter from counsel for the appellant, in which he discussed the question of the advisability of the sale of said land, and advised Kennedy that, if he had entered an appearance in the case, no order would be made without his consent. On January 27, 1926, and again on April 23, 1926, Kennedy wrote the counsel for the appellant, referring to the matter that the administrator of the estate of Gertrude had not received any rental from the Mitchell estate for the years of 1924 and 1925. No reply was received to these letters. The letters tend to show that Kennedy did not know of the instant suit at the time they were written. The failure to reply to them does not impute bad faith to appellant's counsel. A copy of the decree which was sought to be entered in the Rinker case was forwarded to Kennedy the latter part of August, 1926, and thereafter Kennedy went to Boone, and it is his contention that at said time he learned for the first time that the instant action had been brought, and then discovered that decree had been entered therein.

We have set out the record at perhaps undue length. The question for our determination is whether or not, upon this record, there was such showing of unavoidable casualty or misfortune as justified the action of the trial court in vacating and setting aside the decree in the instant case and granting a new trial to Patrick.

We are satisfied, under the record, that Patrick believed in good faith that the same original notices had been served upon his brother D. A. as had been served upon him. He instructed his brother to employ an attorney to look after the matter, and was assured that this would be done, and rested in the confidence that it would be done. Not having heard anything to the contrary, he doubtless relied upon the instructions that he had given to his brother, and believed that the case would be taken care of. D. A. Bagan requested the deputy sheriff to deliver the copy or copies immediately to the attorney, and within a reasonable time inquired of the attorney in regard to the same, and was assured that he would give the matter attention. The question is whether or not Kennedy was advised of the pendency of the instant action, and neglected to give it attention. The return of the

sheriff upon the original notice is presumptively correct, and is not to be impeached except upon clear and satisfactory proof. *Des Moines Coal & Coke Co. v. Marks Inv. Co.*, 197 Iowa 589; *Ketchum v. White*, 72 Iowa 193; *Wyland v. Frost*, 75 Iowa 209; *McWilliams v. Robertson*, 180 Iowa 281; *Pyle v. Stone*, 185 Iowa 785; *Mosher v. McDonald & Co.*, 128 Iowa 68; *Farnsley v. Stillwell*, 107 Iowa 631.

We are not disposed, under the record in this case, to hold that the return was sufficiently impeached, and that service of the original notice in the instant case was not had upon D. A. Bagan. Whether the copy of the original notice in the instant case, however, was delivered to Kennedy, so that he understood that he was employed in connection with the instant case, as well as the Rinker case, is a more difficult and doubtful question. No reason has been suggested why Kennedy should have failed to enter an appearance for the defendants and give attention to the instant case if he was advised of its pendency, the same as he did in the Rinker case. There was much more at stake for his client in the instant case than in the Rinker case. It is possible that the copy of the notice in the instant case, if properly served upon D. A., might have miscarried, or been lost, in the transactions that took place at Estherville. At this point, the case is exceedingly close. In actions of this kind, a very large discretion is vested in the trial court and we are reluctant to reverse the ruling of the trial court in a case of this character, especially where a new trial is granted, and a meritorious defense is shown.

Upon the entire record, we are not disposed to disturb the conclusion of the trial court in granting a new trial. As bearing on the question, see *Farmers Exch. Bank v. Trester*, 145 Iowa 665; *Newlove v. Stern*, 196 Iowa 1111; *Clarke v. Smith*, 195 Iowa 1299.

II. A question is raised as to the portion of the decree that construes the will and dismisses appellant's petition. In a proceeding of this character, it is contemplated that the court shall first try out the question as to the setting aside of the decree. It is essential, also, that a prima-facie showing be made as to a meritorious defense. It is obvious that it would be quite

improper to try the issue of vacating the judgment if there was no showing of any defense to the action. *Johnson, Lane & Co. v. Nash-Wright Co.,* 121 Iowa 173, 182. But it is not contemplated that the merits of the case shall be tried out in the hearing upon the application to vacate the judgment. If the judgment is vacated, thereafter issue may be joined, and the case tried out on its merits. *Brock v. Ellsworth State Sav. Bank,* 192 Iowa 1042; *Worth v. Wetmore,* 87 Iowa 62.

In this case, the order of the trial court in vacating the original decree is affirmed.

That portion of the order and decree which determines the merits of the controversy must be reversed, for such further proceedings in the way of trial of the original action as may be proper.

The costs of this appeal will be taxed one half to appellant and one half to appellee.—*Affirmed in part; reversed in part.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.